Defendant-appellant appeals the July 31, 1998, Judgment Entry of the Canton Municipal Court.
 STATEMENT OF THE FACTS AND CASE
Douglas Dale is the Secretary-Treasurer and Manager of Appellant Canton Realty and Development Distribution, Inc. In 1992, appellant purchased a single family home located at 919 Eighth St., N.W. in the City of Canton. Since the City of Canton is the sole provider of water services to the public within the city limits, Dale, on November 10, 1992, as agent of the corporation and fee simple owner of the property, executed a contract for water services. The City of Canton refuses to enter into such a contract with anyone other than the fee simple owner of real property. Pursuant to the terms of the contract, appellant agreed to be governed by the rules and regulations of the Canton City Water Department and to be liable for water rent.
Appellant, in August of 1996, entered into a contract with Malaika Mandela for the sale of the premises. Mandela, who moved into the house owned by appellant in late October or early November of 1996, agreed to be responsible for the payment of all utilities, including water, sewer and sanitary pick-up. However, not only was the sale to Mandela never completed, but the water, sewer and sanitation bills for the property were, for the most part, unpaid.
As of February 3, 1997, appellant owed appellee a total of $31.23 for water, sewer and sanitation services, which are billed quarterly, for the property in question. Appellee, on or about March 1, 1997, mailed appellant a statement showing a total of $243.28 due by March 10, 1997, for water, sewer and sanitation services for the period from November 5, 1996, through February 6, 1997. After such statement went unpaid, appellee, on or about March 15, 1997, sent appellant a statement indicating that appellant's account was past due and that payment should be made immediately to avoid possible disconnection. Such statement contained the following language:
 "THE WATER IS SCHEDULED FOR TURN OFF. IF YOU ARE UNABLE TO MAKE FULL PAYMENT BY DUE DATE CONTACT CREDIT DEPT. . . . ."
Shortly thereafter, a $40.00 payment was made on the bill by Mandela, leaving a balance of $203.28. The water, however, was not turned off despite the failure to pay the bill in full.
Appellee, on or about June 1, 1997, mailed appellant another statement showing an account balance of $488.34. On or about June 4, 1997, appellant, in response, sent appellee a certified letter stating that it objected to any extensions of credit for city utility services at the subject property and that it would not be liable for the same. Appellant, in its letter, also directed appellee to turn the water to the property off if the present bill was not paid in full. Appellee received such letter on June 6, 1997. After such bill, which covered the period from February 6, 1997, through April 30, 1997, was not paid by the June 10, 1997, due date, appellee, on or about June 26, 1997, sent appellant an "urgent" notice stating that the water service would be turned off due to a delinquent utility bill in the amount of $203.28 if the water bill was not paid within 72 hours. The water to the premises was finally turned off on July 7, 1997. However, at the time, appellee was unable to obtain an actual meter reading. Shortly thereafter, Mandela moved out of the premises.
A final water meter reading was performed by appellee on September 26, 1997, three days after appellant had sold the property. On or about October 16, 1997, appellee sent appellant a statement covering the period from August 4, 1997, through September 26, 1997, which listed a total account balance of $922.94 for water, sewer and sanitation charges. As evidenced by a statement dated March 1, 1998, appellee added the $922.94 for services provided to the 919 Eighth Street address to appellant's bill for services provided to another property owned by appellant, which is located at 808 High Avenue, N.W. in the City of Canton.
After the bill remained unpaid, appellee, on April 3, 1998, filed a complaint on an account against appellant, demanding judgment against appellant in the amount of $922.94, plus interest and costs. On May 6, 1998, appellant filed an answer and counterclaim. In its counterclaim, appellant alleged that it had paid $846.69 for water, sewer and refuse collection services at 915 Eighth Street, N.W. and at 808 High Avenue, N.W., but those services had not been received. As affirmative defenses, appellant argued that it was entitled to credits for those services not received but paid for by appellant and for "water services extended to others in spite of [appellant's] express direction not to so extend credit." Appellant previously had filed affidavits for sanitation credits for both properties but was denied credit requested in the amount of $846.69 by the city's sanitation department. Appellee filed a reply to appellant's counterclaim on May 11, 1998.
After the bench trial held in the Canton Municipal Court before Judge Richard J. Kubilus on July 8, 1998, the parties filed stipulations on July 10, 1998. Among the facts stipulated to was the fact that the statements mailed by appellee to appellant accurately expressed appellee's charges for water, sewer, and sanitation collection services to the real property located at 919 Eighth Street, N.W. and the payments made upon such charges. The parties also stipulated that the water consumption and sewer rates are reasonable but there was no such stipulation regarding refuse collection. Further stipulations were that appellee had provided water service for the period including January, 1997, through July 7, 1997, and sewer service for the period including January, 1997, through September, 1997, to the 919 Eighth Street, N.W. address, as well as refuse collection for the period including February 3, 1997, through July 31, 1997.
Following the bench trial, both parties also filed post trial briefs. Pursuant to a Judgment Entry filed on July 31, 1998, the trial court granted appellee judgment against appellant in the amount of $922.94 with interests and costs. The trial court further found for appellee on appellant's counterclaim.
It is from the July 31, 1998, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT'S FINDING THAT THE DEFENDANT IS INDEBTED TO THE PLAINTIFF FOR WATER SERVICE RENDERED AFTER FEBRUARY 3, 1997, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT'S FINDING THAT DEFENDANT IS INDEBTED TO THE CITY FOR SANITARY SERVICE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ITS JUDGMENT THEREON IS CONTRARY TO LAW.
 I
Appellant, in his first assignment of error, contends that the trial court's finding that appellant is indebted to appellee for water services at 919 Eighth Street, N.W. in the City of Canton is against the manifest weight of the evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Under the provisions of Section 4, Article XVIII of the Ohio Constitution, a municipality, such as the City of Canton, "may acquire, construct, own, lease and operate, within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, . . .". To this end, R.C. 743.02 provides that the director of public service [of a municipality] "may make such by-laws and regulations as he deems necessary for the safe, economical, and efficient management and protection of the water works of a municipal corporation." Such by-laws or regulations "shall have the same validity as ordinances when not repugnant thereto or to the constitution or laws of the State." The director of public services is authorized by R.C.743.03 to collect water rents. With respect to the assessment and collection of water rents, R.C. 743.04 specifically states that the director of public service "may assess and collect a water rent or charge of sufficient amount and in such manner as he . . . determines to be most equitable from all tenements and premises supplied with water." Such section also permits a municipality to bring an action against a property owner to collect unpaid rents or charges.
The City of Canton, in providing residential utility services, will not contract with anyone but the fee simple owner of the property. The property owner, therefore, cannot transfer the water or other utility accounts to any tenant on its property. Thus, the property owner is liable to the city for any default by the tenant. Appellant argues that this "non-transferability feature" is against public policy and unconscionable.
The Ohio Supreme Court, in Pfau v. Cincinnati (1943),142 Ohio St. 101 addressed the constitutionality of an ordinance making a real estate owner liable for utility services provided to his tenant on the property. In holding such ordinance constitutional, the court cited Section 4, Article XVIII of the Ohio Constitution, cited above, which permits a municipality to operate a public utility. While the Supreme Court in Pfau did not address whether such an ordinance would violate the due process clauses of either the United States or Ohio Constitutions, the court in Morrical v. Village of New Miami
(1984), 16 Ohio App.3d 439, after reviewing decisions from Missouri, Kentucky, and Virginia in addition to Pfau, supra,
did address those issues. The Court in Morrical expressly held that a municipal ordinance imposing liability on a property owner for water services provided to a tenant on the premises did not violate either the due process or equal protection clauses of either the Ohio or United States Constitutions. Thus, appellee's policy of making the fee simple owner of property contractually liable for utility services is not unconstitutional.
Appellant cites numerous cases in support of his contention that a tenant has a right to his or her own account for water services. Such cases, however, are factually distinguishable from the case sub judice since they concern whether a city can terminate water at a tenant's home and refuse to contract directly with the tenant for continued water service when the landlord defaults on payment of his bill and the tenant, therefore, is threatened with the discontinuation of water service. However, the case before us was not brought by a tenant who tried to contract with the city for water and we, therefore, are making no statement as to that situation. Moreover, there are valid reasons for the city to contract with the fee simple owner of the property. A large percentage of city property is tenant occupied. Because of the high turnover rate in tenant-occupied property, it is more efficient for the city to contract with the property's owner, who is known to the city, and to collect any rents owed from the same rather than pursuing transients. Requiring the city to contract for utility services with each tenant would create a bureaucratic and administrative nightmare since the city would be forced to keep track of not only each tenant, but also what part of a bill he or she is responsible for. Furthermore, a landlord can, to compensate himself for utility payments, adjust the rent accordingly.
Appellant, with regard to his first assignment of error, also submits that appellee's procedure for disconnection of water service is unreasonable. Appellant points out that while it was notified that the water was scheduled for turn off on March 15, 1997, the water was not actually turned off until July 7, 1997, despite the fact that the bill was never paid in full and the fact that appellant had requested, in writing, that the water be turned off. In the case of tenant-occupied property, this extension of credit on utility accounts, according to appellant, is at the expense of the landowner.
However, because water is a necessity of life, the city has established procedures that must be followed before water service can be disconnected to occupied property. Cathy Patt, the Supervisor of Utility Billings and Collections for the City of Canton, testified at trial that if a bill for water service to an occupied property is in arrears, then the full delinquency process must be gone through before water service can be shut off and residents deprived of potable water. The earliest that the city will shut off water to an occupied residential property when payments are in arrears, according to Patt, is 118 days after a person receives their statement. The established procedure, which was followed in this matter, clearly is reasonable considering the necessity of water to life, safety and health. Moreover, to allow a landlord to summarily order the disconnection of water service to his tenant-occupied property, as appellant suggests, would interject the City of Canton into the midst of the landlord-tenant relationship.
Finally, there is no dispute that Douglas Dale, in his administrative capacity, signed the contract with appellee for water services and thus agreed that appellant would be liable for water rent for the Eighth Street property and agreed appellant would be governed by the rules and regulations of the Canton City Water Department. Not only have the parties stipulated that appellee's rates for water consumption are reasonable, but also that appellee's statements to appellant for water services accurately reflect appellee's charges for such services.
Since the trial court's finding that appellant is indebted to appellee for water service is not against the manifest weight of the evidence nor contrary to law, appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, argues that the trial court's finding that appellant is indebted to appellee for sanitary service is against the manifest weight of the evidence and that its judgment thereon is contrary to law. Appellant specifically contends that appellee's billing practice for sanitation services is not reasonable and fair, as is required by State, ex rel. Mt. Sinai Hospital v. Hickey
(1940), 137 Ohio St. 474.
R.C. 715.43 states that a municipal corporation may provide for the "collection and disposition" of sewage, garbage and other refuse. R.C. 717.01(C) authorizes a municipal corporation to "erect a crematory or provide other means for disposing of garbage or refuse . . .".
With respect to trash collection, Section 975.03(d) of the Canton City Charter provides that all single-family and multi-family residential units "shall use the [solid waste] collection service of the City". Such section prohibits private collection of any residential solid waste by single-family and multi-family residential units. As established in Section 975.08(c) of the charter, rates for single-family residential solid waste collection are billed quarterly, with quarters commencing in March, June, September, and December. Pursuant to such section, city single-family residential rates are set at $32.78 per quarterly billing period. However, Section 975.08(g) of the charter permits the Director of Public Service to make adjustments to sanitation collection charges. Such section provides as follows:
 "Adjustments shall be made only after the charges have been made by the City, and upon receipt of an affidavit executed by the owner of record of the residential unit or units for which the charges have been made. A separate affidavit shall be completed for each quarterly billing period for which an adjustment is being requested, unless the Sanitation Superintendent or his designee verifies that service was not rendered. The affidavit shall state the following:
 (1) That no garbage collection was made during the quarterly billing period for which the adjustment is requested.
 (2) The reason no garbage collection was made by the City.
 (3) That the owner understands that knowingly making a false statement of material fact in the affidavit constitutes a crime, punishable under City ordinance.
Melvyn Meadows, the Superintendent of Sanitation for the City of Canton, testified at trial that before a sanitation credit will be granted, the property for which the credit is requested must have been vacant for a complete quarterly billing period. Thus, if the sanitation service is used during only one day or one week of a quarter, the landowner must pay the bill for the entire quarter. Although it applied to the city for sanitation credits, appellant was denied the same either because sanitation service was used at its properties at some point during the quarter or because it did not submit the necessary affidavit. At trial, appellant, claiming vacancies of at least one month in two of its properties, submitted to the trial court an affidavit for sanitation credits for these two properties (Defendant's Exhibit D). The trial court, however, also had affidavits signed by appellant's representative (Douglas Dale), which had been submitted to the City of Canton on previous dates, also asking for credit. (Plaintiff's exhibits 3 and 4). The trial court found that such affidavits were conflicting and held that appellant was not entitled to any credits for sanitation services. Appellant also has conceded that the months of vacancies did not cover any complete billing period.
Although appellant argues that appellee's billing policy and associated credit policy for its sanitation service is unfair and unreasonable, the court finds otherwise. Given the large number of houses covered by one sanitation crew during a one week period, it would be extremely burdensome, if not impossible, for appellee to verify each week which properties utilized the sanitation service and which did not. Each property owner who did not use the property for a limited period of time, for example, during a two or three week vacation, would expect to receive a sanitation credit covering such period. Moreover, through the use of quarterly billing cycles, each property owner receives the benefit of low rates for sanitation collection.
The Court finds, therefore, that the trial court's finding that appellant is not entitled to a judgment against the city nor a credit against the bill for city services supplied to 919 Eighth Street, N.W. in the amount of $846.69 is not against the manifest weight of the evidence or contrary to law.
Appellant's second assignment of error is overruled.
The judgment of the Canton Municipal Court is affirmed.
By Edwards, J., Hoffman, P. J. and Farmer, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.
---------------------------
---------------------------
 --------------------------- JUDGES